### McKEEVER et ux. v. DITTMAN. (No. 1111.)

(Court of Civil Appeals of Texas. Beaumont. May 22, 1924. Rehearing Denied June 4, 1924.)

1. Principal and agent ⟜123(3) — Evidence held insufficient to sustain finding that owners of farm authorized foreman to execute chattel mortgages.

Evidence *held* insufficient to warrant finding that owners of farm authorized foreman in possession thereof to execute chattel mortgage covering property other than mules.

On Motion for Rehearing.

2. Principal and agent ⟜119(1)—Owners did not have burden of proving want of authority of their foreman to execute chattel mortgage.

Owners of property on farm, attacking validity of chattel mortgage thereon executed by their foreman in possession of farm, did not have burden of proving foreman's want of authority to execute mortgage.

3. Evidence ⟜589—Effect must be given to uncontradicted testimony of party not impeached or discredited.

Neither jury nor trial judge may disregard and decline to give effect to the uncontradicted testimony of a party to a suit, when that testimony is positive and unequivocal, and there is nothing done to impeach or discredit it.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Mrs. Anna Dittman against J. J. Fenn and others, in which J. J. McKeever and wife were impleaded as defendants. Judgment for plaintiff, and defendants J. J. McKeever and wife appeal. Reversed and amended in part, and affirmed in part.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Chas. O. Guynes and E. B. Colgin, both of Houston, for appellants.

W. S. Strickland, of Eagle Lake, and Sam R. Merrill, H. H. Cooper, and R. W. Franklin, all of Houston, for appellee.

HIGHTOWER, C. J. This suit was filed in one of the district courts of Harris county by Mrs. Anna Dittman, as plaintiff, against J. J. Fenn and C. F. Witherspoon & Sons and W. S. Beadles & Co., as defendants. The plaintiff's suit as against Fenn is based upon two promissory notes, one in the sum of $2,500 and the other in the sum of $1,000; the larger note having been executed on May 10, 1920, and the other note 14 days later on May 24, 1920. Both notes provide for interest at the rate of 10 per cent. per annum from date and for usual attorney's fees, and both were made payable on October 1, following the date of execution to the plaintiff, Mrs. Anna Dittman. The plaintiff further alleged that, at the time the first note was executed by Fenn, he also executed a chattel mortgage to secure its payment, the mortgage covering 33 head of mules, 30 head of horses and mares, 30 head of cattle, 2 two-horse wagons and 6 four-horse wagons, 325 acres of corn and 360 acres of cotton, which crops were grown upon farm in Ft. Bend county in the year 1920. When the second note was executed, it was also stipulated by written contract between the plaintiff, Mrs. Anna Dittman, and Fenn that the chattel mortgage theretofore executed should also be considered as security for the payment of the second note. Default in the payment of both notes by Fenn was alleged and judgment was prayed against him for the amount of notes, interest, and attorney's fees and for foreclosure of the chattel mortgage.

The plaintiff, Mrs. Dittman, for cause of action against Witherspoon & Sons and Beadles & Co., alleged substantially that these defendants had converted the cotton which had been raised by Fenn and which was covered by the mortgage executed by him to secure the notes; that 20 bales of such cotton had been converted by Witherspoon & Sons, which at the time of the conversion was of the value of $2,100, and that 13 bales of cotton had been converted by Beadles & Co., which at the time of the conversion was of the value of $1,300, and judgment was prayed against these defendants for the market value of the cotton converted by them, as well as for foreclosure of the mortgage against all defendants.

The record does not disclose that Fenn filed any answer, but Witherspoon & Sons and Beadles & Co., both answered in due time, and these defendants admitted that they had purchased the number of bales of cotton as alleged by the plaintiff, but they each specially alleged that they were innocent purchasers and lienholders of the cotton so purchased and denied the right of the plaintiff to recover anything against them as for conversion of the cotton. In addition to this, both Witherspoon & Sons and Beadles & Co. further alleged that they had been informed that J. J. McKeever and Mrs. Mae Fenn McKeever, his wife, were asserting ownership and claim to the cotton that had been purchased by them from Fenn and to the proceeds thereof, and that for their protection J. J. McKeever and his said wife should be made parties defendant to the suit, and they so prayed. Citation was duly issued to McKeever and wife, and they, in due time, filed their answer as defendants, in which they first generally denied all the allegations in the pleadings of the other parties and then specially alleged that Fenn had no authority to borrow any sum of money for them or either of them and had no authority to execute the mortgage set up in the plaintiff's petition upon any of the property therein described other than the 33 head of mules; that all the property described in the chattel mortgage, including the crops, was the separate property of Mrs. McKeever at the time of the execution of the mortgage by Fenn and that neither Mrs. McKeever nor her husband had ever authorized Fenn to mortgage any of such property or to borrow any money on their account or for either of them; that the farm on which the crops mentioned in the chattel mortgage were grown was the separate property of Mrs. McKeever and that all the cotton that was raised upon that farm during the year 1920 belonged to Mrs. McKeever and her tenants on the farm who had raised the cotton and that Fenn had no interest whatever in any of such cotton; and that he was only employed by the McKeevers as foreman on the farm during the year 1920, with instructions and directions to see that Mrs. McKeever's tenants on the farm properly attended to the cultivation of their crops, etc. These defendants prayed that neither the plaintiff nor their codefendants take anything as against them and that foreclosure of the mortgage sought by the plaintiff be denied. After McKeever and wife had filed their answer, the plaintiff, Mrs. Dittman, filed her second supplemental petition, which was in answer to the pleadings of all the defendants and after interposing the general demurrer and a number of special exceptions, none of which are before us, and the general denial, she then further specially pleaded in substance that the defendants, McKeever and wife, were estopped to claim that Fenn was without authority to mortgage the property described in the chattel mortgage, for the reason in substance that said defendants had placed Fenn, during the year 1920, in possession and control of Mrs. McKeever's farm and all property situated and kept thereon and that they had permitted him to hold himself out to the public in general as the owner of all such property

and as being authorized to incumber the same and borrow money for the purpose of carrying on the farming operations, and that Fenn had so held himself out with the full knowledge and acquiescence of McKeever and wife and, that the plaintiff, Mrs. Dittman, was thereby led to believe that all the property covered by the mortgage was the property of Fenn and that he had authority to mortgage the same as he did, and that therefore the plaintiff was entitled to be protected as an innocent lienholder and that the mortgage should be foreclosed in its entirety for the payment of her debt.

McKeever and wife by further supplemental pleading interposed a general denial and then specially denied all the facts alleged by the plaintiff in her second supplemental petition as an estoppel against them. This states substantially enough of the pleadings of the parties to make intelligible our disposition of this appeal.

The case was tried with a jury and was submitted upon special issues, the first two being as follows:

"Was J. J. Fenn, at the time he made the loans in evidence and executed the mortgages, also the owner of the other property covered by the mortgages? You will answer, 'He was,' or 'He was not,' as you may find the facts to be."

To make clear here the meaning of this issue, we will state that the court had already told the jury in the charge that there was no dispute as to Fenn's authority to mortgage the 33 head of mules and certain cattle branded LM, as described in the chattel mortgage, and this we will allude to later. In answer to this first issue, the jury answered, "No."

The second special issue was as follows:

"Did Mrs. Mae Fenn McKeever authorize J. J. Fenn to borrow money for the purpose of operating the plantation and to mortgage the crops, implements, and stock, other than the LM cattle and 33 head of mules? You will answer, 'She did' or 'She did not,' as you may find the facts to be."

To this issue the jury answered, "She did."

There were a number of other special issues submitted to the jury, among them being the issue of estoppel as pleaded by the plaintiff against McKeever and wife, but the jury were instructed by the court that in the event they should answer either of the first two issues in the affirmative, they would not consider any of the other special issues, and the jury, having answered the second special issue in the affirmative, did not answer any of the other special issues contained in the court's charge.

Upon this verdict, after motion by the plaintiff therefor, judgment was rendered in her favor against defendant, Fenn, for the amount of the notes, interest, and attorney's fees, as prayed by the plaintiff and against all the defendants for foreclosure of the chattel mortgage as to all the property therein described. Judgment was further rendered in favor of the plaintiff against Witherspoon & Sons for $1,521.65 with interest on that amount at the rate of 6 per cent. from date of judgment and against W. S. Beadles & Co. for the sum of $1,323.47, with like interest, these money judgments against these defendants being based upon the plaintiff's charge of conversion against these defendants. There were further provisions in the judgment, unnecessary here to mention. From this judgment, the McKeevers have appealed and contend that the evidence adduced upon the trial was wholly insufficient to warrant the verdict of the jury and the judgment of the court based thereupon. Before discussing the merits of this contention, we shall first make a statement of what we consider to be the undisputed facts in this case.

Mrs. McKeever, according to the record before us, owns a farm in Ft. Bend county, Tex., in her own separate right and prior to about the 21st of January, 1920, she and her husband, J. J. McKeever, lived on this farm; but about the date last mentioned, they moved to Houston, where they expected to remain only temporarily. At the time they moved to Houston, all the personal property described in the chattel mortgage heretofore mentioned was the separate property of Mrs. McKeever and was situated upon her farm. Shortly after going to Houston, the McKeevers made arrangements with J. J. Fenn, who was the brother of Mrs. McKeever, by which Fenn was to go upon the farm in Ft. Bend county, as the foreman of the farm for the year 1920, for the purpose of seeing that Mrs. McKeever's tenants, of whom there were a number, properly looked after their crops on the farm and to discharge such duties as ordinarily pertain to the foreman of the farm. For these services Fenn was to receive a salary of $75 per month, to be paid by Mrs. McKeever. He had no interest in the crops to be raised upon the farm, nor any interest in any of the personal property situated upon the farm, unless it was certain cattle branded LM, if there were any such cattle. On March 23, 1920, Mrs. McKeever joined by her husband, executed a bill of sale to Fenn for 33 head of mules described in that instrument, which are the same mules described in the chattel mortgage executed by Fenn to Mrs. Dittman, the plaintiff.

On May 10, 1920, Fenn borrowed from the plaintiff, Mrs. Dittman, $2,500 in cash and executed his note to her for that amount, bearing interest and providing for attorney's fees as we have stated, which note was payable on October 1, following. At the same time, Fenn executed a chattel mortgage in favor of Mrs. Dittman to secure the payment of said note, representing in the chattel

mortgage that he was the owner of all the property thereby covered, which included 33 head of mules, 30 head of cattle, 30 head of horses and mares, 2 two-horse wagons, and 6 four-horse wagons, 325 acres of corn and 360 acres of cotton; all this property, with the exception of the mules described in the bill of sale from Mrs. McKeever to Fenn and also with the exception of such cattle as were branded LM, if there were any such cattle, was the property of Mrs. McKeever, and Fenn had no interest whatever in any of it. It was all the time located and situated upon Mrs. McKeever's farm in Ft. Bend county, the title to which as disclosed by the deed records was then in Mrs. McKeever. Ten days later, as we have shown, Fenn borrowed $1,000 more from Mrs. Dittman, and executed in her favor a note for that amount, which was also made payable October 1, following. At the time of the execution of this last note, he entered into a written contract with Mrs. Dittman, in which it was stipulated that the chattel mortgage theretofore executed should also secure the second note. Neither of the notes executed by Fenn in favor of Mrs. Dittman was ever paid, and this suit, as we have shown, followed.

Upon the trial of the case, both McKeever and his wife were witnesses, and both testified very positively that Fenn was not authorized by them or either of them to mortgage any of the property described in the chattel mortgage in this case; that he was only employed as foreman upon the farm of Mrs. McKeever, as we have before stated, and working for a salary as we have shown, and that neither McKeever nor his wife had any notice whatever that Fenn was claiming to own any of the property of Mrs. McKeever, which he attempted to mortgage, and, in fact, never learned that he had executed such mortgage until late in the fall of the year 1920, when Fenn had sold much of the cotton to Witherspoon & Sons and Beadles & Co., and that they then learned from him, for the first time, that he had assumed the authority to mortgage Mrs. McKeever's property. Fenn, himself, was not a witness in the case and could not be found at the time of the trial, though the record reflects that all of the parties were anxious to secure his presence.

Now, it is appellee's contention that the verdict in this case is supported by facts and circumstances and that the jury's answer to the second special issue, as we have shown, sustains her plea of estoppel. We do not understand that counsel for appellee take the position here that the evidence was sufficient to warrant a finding by the jury that Fenn was actually authorized by Mrs. McKeever to mortgage her property, as he did, other than the mules, but we understand it to be counsel's contention that the evidence was sufficient to warrant the jury's finding that Mrs. McKeever was estopped to deny such authority in Fenn. Therefore we shall not discuss the question as to whether the evidence in this case, as adduced upon the trial, was sufficient to warrant a finding by the jury that Mrs. McKeever was estopped to deny such authority in Fenn. As we construe the jury's answer to second special issue shown above, it was no finding of estoppel as claimed by counsel for the appellee. We repeat the question: "Did Mrs. Mae Fenn McKeever authorize J. J. Fenn to borrow money for the purpose of operating the plantation and to mortgage the crops, implements, and stock, other than the LM cattle and 33 head of mules?" The answer to this question was as we have shown: "She did." As we construe this special issue, it calls for an answer of the jury as to whether or not Mrs. McKeever actually authorized Fenn to execute the mortgage in question, and, if we are correct in that construction, it follows that the question does not present the issue of estoppel as pleaded by the plaintiff. Therefore, unless the evidence in this case is sufficient to warrant the finding that Fenn was actually authorized by Mrs. McKeever to mortgage her property, as he did, this judgment cannot stand. For it cannot be said that the judgment in this case involves a finding by the trial court, in favor of the plaintiff on the issue of estoppel as pleaded by her, for the reason that McKeever and wife, through their counsel on the trial, requested the court in a properly framed issue to submit to the jury the issue of estoppel as pleaded by the plaintiff and the court refused to submit such issue. We here refer to special issues Nos. 2 and 3 requested by the McKeevers. No. 2 was as follows:

"Now in the above numbered and entitled cause, come the defendants, J. J. McKeever and Mae Fenn McKeever, and present as their special issue No. 2 and respectfully ask that same be given in charge to the jury: Did J. J. McKeever or Mae Fenn McKeever know, prior to or at the time of the execution of the mortgage, by J. J. Fenn to Mrs. Anna Dittman, that J. J. Fenn was claiming to have the right to execute said mortgage on property other than the 33 mules? You will let your answer be 'Yes' or 'No,' as you find the facts to be."

Special issue No. 3 was as follows:

"If in answer to defendant McKeever's special issue No. 2 you have answered 'Yes,' and in that event only, then you will answer the following: Did J. J. McKeever or Mae Fenn McKeever know of J. J. Fenn claiming to have the right to or his attempt to mortgage said property, other than the said mules and said cattle branded LM, in time for them to have notified plaintiff or her agent, Strickland, that Fenn had no such right? You will let your answer be 'Yes' or 'No' as you find the facts to be."

The court refused both these special issues; therefore we say that the trial court's

judgment does not involve a finding that the McKeevers are estopped as pleaded by the plaintiff, and, if the judgment can be upheld at all, it must be upon the theory that the evidence is sufficient to warrant the jury finding that Fenn had actual authority to mortgage Mrs. McKeever's property.

[1] The statement of facts in this case is quite voluminous, and we have searched it carefully, not being content to take the excerpts found in the briefs, and have reached the conclusion that the evidence adduced upon the trial was wholly insufficient to warrant the finding that Fenn had actual authority from Mrs. McKeever or from her husband acting as her agent, to mortgage any of the property belonging to Mrs. McKeever and described in the chattel mortgage, other than the 33 head of mules, and we are, therefore, compelled to sustain appellants' contention that the evidence in this case was wholly insufficient to warrant the verdict and judgment as against them. It follows that it is our conclusion that the trial court's judgment, foreclosing in favor of the plaintiff, Mrs. Dittman, the claimed chattel mortgage lien as against appellants McKeever and wife on the property therein described, other than the 33 head of mules and cattle branded LM, must be reversed and the cause amended for a new trial as between the appellee, Mrs. Dittman, and appellants J. J. McKeever and Mae Fenn McKeever. The judgment as between all the other parties to this suit, who have not complained, will be affirmed; and it has been so ordered.

Judgment reversed and cause amended in part and in part affirmed.

### On Motion for Rehearing.

In the motion for rehearing in this case, counsel for the appellee earnestly and vigorously insist that we committed error in reversing the judgment of the lower court on the ground of insufficiency of the evidence to sustain the verdict upon which the judgment is based. They contend that the burden rested upon the appellants, McKeever and wife, to prove that Mrs. McKeever was the owner of the property covered by the mortgage executed by Fenn, and also to prove that she did not authorize Fenn to execute the mortgage.

[2] It is our opinion that such burden did not rest upon appellants, but if so, it was fully and completely met, both as to Mrs. McKeever's ownership and want of authority in Fenn to mortgage her property, with the exception of the mules. We have carefully reconsidered the evidence relating to this contention, and still conclude that our original opinion was correct.

[3] It is true, as argued by counsel in the motion, that McKeever and wife were interested witnesses, being parties to the suit, but their testimony was positive and un-

equivocal to the effect that they did not authorize Fenn to mortgage Mrs. McKeever's property, other than the mules, and there was no evidence of any character tending to impeach or discredit such testimony. Such being the state of the evidence, it was not the province of the jury to say that Fenn had authority to mortgage Mrs. McKeever's property. Whatever may have been the rule heretofore, it now seems to be settled in this state that neither a jury nor a trial judge may disregard and decline to give effect to the uncontradicted testimony of a party to a suit, when that testimony is positive and unequivocal, and there is nothing done to impeach or discredit it. Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966; Joffre v. Mynatt (Tex. Civ. App.) 206 S. W. 951; Hill v. Staats (Tex. Civ. App.) 187 S. W. 1039.

The motion for rehearing is overruled.