## SCHUCHT v. STIDHAM et al.
### No. 12509.

Court of Civil Appeals of Texas. Fort Worth.
Nov. 29, 1930.

Rehearing Denied Jan. 17, 1931.

Taylor, Muse & Taylor, of Wichita Falls, for appellant.

Ben W. Tipton, of Electra, and Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellees.

BUCK, J.

This is an appeal from a judgment of the court below, in which judgment was rendered for the plaintiff for $4,759.25. Plaintiff filed a petition in which he attempted to set out a sworn account. The only evidence introduced to support the account was the testimony of O. M. Stidham, one of the plaintiffs. Stidham and C. C. Thrasher were partners. The alleged account covered about a year, beginning June 18, 1928, and ending June 21, 1929. The items alleged were for hauling two loads of cable tools from south of Mineral Wells, to Paul Schucht's yard at Electra, $437; to material furnished, digging cellar, hauling lumber and tools, and building standard rig and derrick $2,750; and other items in which the plaintiff failed to designate the price he charged for each separate piece of work that he did.

Article 3736, Rev. Civ. Statutes of 1925, reads as follows: "When any action or defense is founded upon an open account, supported by the affidavit of the party, his agent or attorney, taken before some officer authorized to administer oaths, to the effect that such account is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall, before an announcement of ready for trial in said cause, file a written denial, under oath, stating that such account is not just or true, in whole or in part, and if in part only, stating the items and particulars which are unjust; provided, that when such counter affidavit shall be filed on the day of the trial, the party claiming under such verified account shall have the right to continue such cause until the next term of court; when he fails to file such affidavit, he shall not be permitted to deny the account, or any item therein as the case may be."

■ An open account is one in respect to which nothing has occurred to bind either party by its statements; an account which is yet fully open to be disputed. A stated account is an account of many items based upon agreements as to each item as to the prices and the time of payment. It is only an open account that is provable by an affidavit under

this article. Wroten Grain & Lumber Co. v. Mineola Box Mfg. Co. (Tex. Civ. App.) 95 S. W. 745. An account in part for items due for salary under a contract, and in part for board, involves isolated transactions resting on special contract, and is not an account whereby the relation of debtor and creditor is created by a general course of dealing, and, though the account is sworn to, defendant need not deny the same under oath. Bishop v. Mount (Tex. Civ. App.) 152 S. W. 442. An account for merchandise sold defendant, not itemized as contemplated by the statute, is not such an account as when sworn to would be admissible to prove itself, although there was no denial under oath to any item. A. Harris & Co. v. Grinnell Willis & Co. (Tex. Civ. App.) 187 S. W. 753. This article is applied only to transactions between persons in which by sale and purchase the title to personal property is passed from one to another and the relation of debtor and creditor is created by general course of dealing, and does not mean one or more isolated transactions resting upon a special contract. Bixler v. Dolieve (Tex. Civ. App.) 220 S. W. 148.

■ This account is not an open account under the terms of the statutes. The plaintiff attempted to prove the account by evidence, and the testimony of Stidham was to the effect that these various items charged were reasonably worth the amount so charged. But Stidham was one of the plaintiffs, and the jury was authorized to believe any part of his testimony and to disbelieve any part thereof, or to reject the testimony as a whole.

The court instructed the jury to find for the plaintiff, and in this there was error. Where the testimony is given altogether by an interested witness, or witnesses, or comes from an interested source, the jury has the right to disregard such testimony. Payne, Agent, v. Malone (Tex. Civ. App.) 239 S. W. 998; Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971; West Lumber Co. v. Goodrich (Tex. Com. App.) 223 S. W. 183, 192.

Therefore, we reverse the judgment and remand the cause for a new trial.

On Appellee's Motion for Rehearing.

■ Appellees in their motion for rehearing do not question the ruling of the court in holding that the account to which the plaintiff made affidavit was not an open account under the terms of article 3736, Rev. Civ. Statutes 1925, but do complain of the ruling and conclusion that, when the testimony was given, altogether by an interested witness, the jury had the right to discredit any part or all of the testimony, and that the peremptory instruction was not authorized. We are cited to one of our own decisions, to wit, Hill v. Staats, 187 S. W. 1039, 1042, writ of error denied by the Supreme Court, in which we said: "Without citing further authorities, it is sufficient to say that we find that the trial court

did not err in directing a verdict for defendant upon the facts shown. This conclusion is reached with the knowledge that the entire testimony upon the question of the instructions given to the chauffeur came from the lips of defendant and his wife, who both may be said to be interested parties. The testimony of appellee and his wife was positive and unequivocal, nor is there any circumstance disclosed in the record tending to discredit or impeach such testimony. See Felts v. Bell County, 103 Tex. 616, 132 S. W. 123; Malone v. Bank [Tex. Civ. App.] 162 S. W. 369; Christensen v. Christiansen [Tex. Civ. App.] 155 S. W. 995; Brooks v. Davis [Tex. Civ. App.] 148 S. W. 1107; Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788; Starkey v. Wooten Gro. Co. [Tex. Civ. App.] 143 S. W. 692; Friedman v. Peters, 18 Tex. Civ. App. 11, 44 S. W. 572."

Appellees also cite Dunlap v. Wright, 280 S.W. 276, 279, by Chief Justice Gallagher of the Waco Court of Civil Appeals, in which the court said: "It has been frequently held, however, that, when the evidence of an interested witness is direct and positive on the point at issue, and where there are no circumstances in the record tending to discredit or impeach his testimony, a verdict contrary thereto will be set aside, that such testimony will justify an instructed verdict, and that a judgment contrary thereto may be reversed and rendered. Joffre v. Mynatt (Tex. Civ. App.) 206 S. W. 951, 952; Starkey v. Wooten Grocery Co. (Tex. Civ. App.) 143 S. W. 692, 693, 694; Friedman v. Peters, 18 Tex. Civ. App. 11, 44 S. W. 572; Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966, 972 (writ refused); Hill v. Staats (Tex. Civ. App.) 187 S. W. 1039, 1042 (writ refused Com. Judges); McKeever v. Dittman (Tex. Civ. App.) 262 S. W. 1054, 1058; Daggett v. Worsham & Co. (Tex. Civ. App.) 264 S. W. 180, 185; Dallas Hotel Co. v. Newberg (Tex. Civ. App.) 246 S. W. 754, 756; Malone v. National Bank of Commerce (Tex. Civ. App.) 162 S. W. 369, 370; Houston v. Holmes (Tex. Civ. App.) 262 S. W. 849, 850; Long v. Shelton (Tex. Civ. App.) 155 S. W. 945, 946; King v. Worthem (Tex. Civ. App.) 37 S. W. 1133."

See Still v. Stevens (Tex. Civ. App.) 13 S. W.(2d) 956; Sigmond Rothschild v. Moore, 22 S.W.(2d) 535, by the Beaumont Court of Civil Appeals, and other cases, laying down the rule that a peremptory instruction is justified where the only testimony is by an interested witness, and the testimony is positive and direct on the points at issue, and where there are no circumstances in the record tending to discredit or impeach the testimony.

But does the testimony in the instant case bring the case within the rule just noted?

It will be remembered that O. M. Stidham and C. C. Thrasher, constituting the firm of Stidham & Thrasher, plaintiffs, relied on the contract with Schucht, for the work to be done by plaintiffs and the amount to be paid by defendant. Stidham, the only witness who testified, testified that he entered into a contract with Mr. Schucht during the year 1928, "to do some work." He testified: "Our contract was, he had a lease over there, and he was to drill a well, and he was turning over some of his acreage and interest to Dr. Hargraves, and for so much money and so much interest, and he wanted a rig built on there. The contract was, he wanted a rig built and what he wanted to know was what we would build it for, and what he wanted was a second hand standard rig and to furnish all material, and we finally agreed to build him a second hand rig and derrick for $2,750. We were employed by Mr. Paul Schucht to haul two loads of cable tools from south of Mineral Wells, Texas, to Paul Schucht yard at Electra, Texas, $437.00, and furthermore we were to haul it back. There was no agreement on the sum to be paid for that hauling, we had been hauling for him on and off, hauling by the day or by the trip or whatever way he desired, depending on the work. I have been in the hauling business eight or ten years. I am acquainted with the reasonable value of the cost of hauling that kind of material the distance that it was out there in that vicinity. The price I charged for hauling the material is the usual and reasonable price charged in that territory for that kind of work. No part of that item has been paid. Demands have been made a number of times. The first one is for materials furnished [for] digging cellar, hauling lumber and tools, and building standard rig and derrick, $2,750. Our agreement was that we were to do all of the work at a flat price of $2,750; that is what we have set out, hauling that particular material and building the derrick. We built a rig and dug the cellar. That item has not been paid. * * * Demand has been made for the payment of it. The next was hauling a boiler from Mineral Wells, Texas, to Waggoner No. 1, $115.00. He had a boiler that he wanted us to move on that location. That was the agreed price for that job. The next item was hauling the load [of] No. 2 pipe [from] Electra to Waggoner No. 1, $15.00. The only agreement we had about that was to haul by the day, or by the load, at whatever might be a fair price. I don't think we had any agreement as to whether it would be by the day or by the load, just wanted us to haul it, that was about all, he wanted us to do the hauling. That was a usual and customary and reasonable charge in that vicinity for that work. The next item, Nov. 1st, we hauled 2 loads standard tools [from] Electra to Waggoner No. 1, $45.00. He had more

tools out there that he wanted hauled than was covered by the original agreement. I think Nov. 3, 1928 [evidently there is some mistake here] is the standard rig tools that were moved from the rig to Waggoner No. 1 at $30 a day, that was by the day. Each of these items from Nov. 1928 down through Dec. 17th, 1928, are the usual and customary and reasonable prices charged for this kind of work in this territory. These items have not been paid and a demand has been made. These last items Nov. 8th to the 28th—hauled 7 loads (101½ bbls.) fuel oil from Waggoner Refining Company to Waggoner No. 1 and Dec. 1st to the 19th—hauled 12 loads (174 bbls.) fuel oil from Wag. Ref. to Waggoner No. 1, $69.60, is the usual and customary price for doing that kind of work. No part of these two items have been paid though a demand has been made numerous times. The items beginning Jan. 1st through Jan. 31st, the charges are the usual and customary charges for that kind and character of work done in that territory where it was done, and I will say in that connection that most of the hauling is $35.00 a day, but we have done their hauling most of the time and we just charged them $30.00 a day. The items between Feb. 13th to Feb. 23rd, there are ten items and the charges made are the usual and customary prices for that kind and character of work in that territory. A demand has been made lots of times for the payment of these items. The items from March 23rd, March 23rd three items on that date, the prices charged were the usual and customary prices for work of this kind and character in this territory. June 4th, hauling standard drilling tools from Waggoner No. 1 to Castleberry No. 1 and building standard rig (hauled three loads and shortage lumber from Electra) Castleberry No. 1, $1,320. That was the contract price for that item as agreed upon. A demand and refusal has been made for that item. There has been $1,320 paid on the whole account. June 28th I hauled three loads gas engine sills, bits from Waggoner No. 1 to Hal Hughes Warehouse, $35.00, and that was the usual and customary price for such work in that territory. A demand has been made and refused. I would like to say in connection about that extra lumber on the Castleberry lease, those 3x12x18 were stuff that Mr. Schucht ordered out there to put on bridges—they were taken out at the same time that the rigs were finished out. A demand has been made and refused for these items. The credit the account shows is Dec. 21st, 1928, by check on account $100.00. June 21st, 1929, by check on account $1,250.00. Total $1,350. These credits are all of the payments made by the defendant on the account. The balance shows $4,758.24. That is the correct balance due by Mr. Schucht as itemized. I think I have known the defendant about fifteen years. I sent him a statement the first of each month."

Then follows what purports to be an open account, duly verified by affidavit, consisting of some forty-five different items, which items included hauling or other work done, for which charges were made from $7.50 to $1,350.

Evidently the testimony of Stidham was in the main with reference to these items. Appellant filed motion in the court below for a postponement of the hearing for one day, in order that he might go over the different items charged, and acquaint himself with them, and with view of being able to make an affidavit as to such account. He promised that he would specifically point out and would prepare his affidavit to said certified account and file the same. The account sued on was in part based on the special contract, and in part for separate items for which no amount had been agreed. Nowhere in the testimony of O. M. Stidham is stated the amount charged for each item in the various items included in the so-called open account, and in each separate charge there was more than one item set forth. It will be seen from the reading of the testimony of O. M. Stidham that he attempted to follow such account in giving his testimony, but only stated that three of such grouped items were charged as agreed amounts, and that the remainder of such charges were made upon the hypothesis that the charges made therefor were reasonable and customary charges for such labor and material. We are of the opinion that the testimony of Stidham is not positive, direct, and unequivocal, such as to authorize the trial court to instruct a verdict in appellees' favor. The testimony of Stidham covered some thirteen months, and consisted of attempted recital of the many items contained in the account rendered, based some on an agreement and some on the usual and customary charges made therefor.

See Pope v. Beauchamp, 110 Tex. 271, 280, 219 S. W. 447, 450, where the court said: "Bearing in mind the rule clearly enunciated by this court, speaking through Judge Brown, in the case of Houston, E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 972, that 'it is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable,' we have concluded that it was a question of fact, for the jury to determine, as to whether

plaintiff in error was a bona fide holder of the note. See, also, Pridgen v. Walker, 40 Tex. 136; Crosby v. Church [Tex. Civ. App.] 99 S. W. 587; Burleson v. Tinnin [Tex. Civ. App.] 100 S. W. 351; First Nat. Bank of Ft. Wayne v. Howard [Tex. Civ. App.] 174 S. W. 720."

We think that, under the circumstances above recited, appellees' motion for rehearing should be overruled, and it is accordingly so ordered.