## WILLACY COUNTY v. CENTRAL POWER & LIGHT CO.

### No. 9339.

Court of Civil Appeals of Texas. San Antonio.

May 9, 1934.

Rehearing Denied July 25, 1934.

See, also (Tex. Civ. App.) 33 S.W.(2d) 476.

Jesse G. Foster, of Raymondville, Hornsby & Hornsby, of Austin, and R. S. Dorsett, of Raymondville, for appellant.

Frank M. Kemp, J. M. Wilson, and L. L. Lentz, all of Corpus Christi, S. L. Gill, of Raymondville, and John W. Hill, of Carrizo Springs, for appellee.

SMITH, Justice.

Prior to the transactions involved here the public highway leading south from Raymondville, in Willacy county, to the line of Cameron county, occupied a right of way which was only 60 feet wide. The state and county desired to improve the highway, and the state, through its highway department, proposed to furnish part of the funds and take over the improvement on condition that the county procure sufficient additional ground and increase the width of the right of way to 80 feet. The county, through its commissioners' court, agreed. In the meantime the county had voted for the issuance of bonds with which to improve the highway.

The Central Power & Light Company's (appellee herein) "high line" occupied a 20-foot right of way adjoining the existing highway, and it became necessary to the highway improvement to take appellee's right of way in the widening process. To this end the county instituted proceedings to condemn appellee's property under the power of eminent domain. Under this proceeding in due course the county took possession of appellee's right of way and began grading the same into the roadway.

Now, appellee's power line and other facilities were already located upon the seized strip and were in actual operation conveying electric currents to the consuming public, and it is alleged that it became necessary, to the safety of the public as well as for the use of the highway, to promptly and completely remove those facilities and set them up elsewhere. In this situation, it is alleged the commissioners' court was confronted with the alternative of having the work of removal done at the county's expense and under its direction, or contracting with appellee to accomplish the removal. The commissioners' court chose the latter alternative, and thereupon entered into a contract with appellee to clear the seized strip of said facilities; the county agreeing to reimburse appellee for "all sums, outlays and expenses actually incurred by the Central Power & Light Company in its removal of said electric transmission line, said Central Power & Light Company to immediately remove said transmission line." Appellee performed its part of the contract at a claimed cost of $6,055.01. The commissioners' court refused, it is alleged, to pay the claim, and is here appealing from a judgment rendered against the county for that sum.

It should be said here that at the time said contract was entered into the condemnation proceeding had reached this court, and was pending herein, on an appeal by the utilities company from an alleged inadequate award of damages for the taking of the easement, and in such appeal that company was strenuously questioning the right of Willacy county to maintain such condemnation proceeding. In this situation it was provided in the contract here involved that the same should be effectual—enforceable—only in the event that the county "should not finally prevail" in said condemnation suit. The idea seemed to be that the county demanded, and took, immediate possession of appellee's right of way and appropriated it to the public highway use, and in putting it to that use it was not only necessary to take the land covered by appellee's easement, but to remove appellee's transmission lines, poles, and other material and facilities from that easement; that if the condemnation proceeding should be upheld the award made therein would compensate appellee for its damage, but if that proceeding should fail, then appellee would be compen-

sated for its damage, nevertheless, by the contract with the county for reimbursement. It so turned out that the condemnation proceeding failed through dismissal by this court for want of power in the commissioners' court to maintain it. Central Power & Light Co. v. Willacy County (Tex. Civ. App.) 33 S.W. (2d) 476. See, also, same case (Tex. Civ. App.) 14 S.W.(2d) 102.

Appellee instituted and prosecuted this suit upon the theory that it is a statutory action founded upon open account, which, when itemized and sworn to and put in evidence, makes a prima facie case which can be contested only by special pleading supported by affidavit of the defendant denying the account in whole, or in specific parts. Article 3736, R. S. 1925, as amended by Acts 1931, c. 239, § 1 (Vernon's Ann. Civ. St. art. 3736).

Appellee's petition sets out the written obligation of the county to reimburse appellee for "all sums, outlays and expenses actually incurred by" appellee "in its removal of said electric transmission line." Attached to this petition was an exhibit in the form of an itemized account of the county with appellee, beginning as follows:

"Willacy County, Texas

"In Account With Central Power and Light Company.

"This is to charge you with the amount expended by us to surrender our transmission line right of way adjacent to the Harlingen Raymondville Highway, between Raymondville and the Cameron County-Willacy County line, as per agreement dated April 17, 1928, as follows, to-wit:

"(1) Costs of surveying new right of way and purchasing such new right of way, exclusive of amounts paid to the various property owners for the right of way and for damages to crops caused in the reconstructing of the line on the new right of way.

"1928

February Voucher No. 2011—meals of surveying crew — $ 4.80

February Journal Entry No. 142—labor — 12.01

March Journal Entry Nos. 137 and 143—labor — 134.94

April Voucher No. 1227—room and meals for crew — 101.60

April Voucher No. 1227—cloth for flags — 1.80

April Voucher No. 1227—bus fare for Compton — 2.25

April Voucher No. 1227—material from Alling Blue Print Co. — 12.02

April Voucher No. 1227—lunch for crew — 2.90

April Voucher No. 15860—insurance — 10.00

April Voucher No. 1743—lunch for crew — 2.75

April Voucher No. 1743—cloth for flags — 1.60

April Voucher No. 1743—ice — 1.20

April Voucher No. 1743—room and meals for four of crew — 113.90

April Voucher No. 1743—lunch for crew — 1.50
* * * "

The 14 items last copied were followed by 50-odd similar items, the whole totaling $3,489.29, which was then explained in the statement as follows: "The above total is the total costs and expenditures in connection with said work for the entire distance between Raymondville and Harlingen, consisting of purchasing right of way and surveying for a total of 334 poles and guys, 183 poles and guys being in Willacy County and on said basis there is chargeable to Willacy County $1,910.52."

This was followed by a second account, as follows:

"(2) Costs of and expenditures for and connected with the purchase of new right of way and the payment of damages to property in connection with the construction of the line on the new right of way:

"Paid to E. W. Archer, 12-19-28 for Easement — $45.00

For damages release — 20.00

Paid to O. R. and Madge Holloway 5-7-28 for easement — 15.00

For damage release — 25.00

Paid to J. H. and Minnie Hughes 5-12-28 for easement — 5.00

Paid to J. B. Turner 5-7-28 for easement — 5.00

Paid to J. P. and Mrs. Hazel Talley 5-7-28 for easement — 5.00

Paid to L. O. Robbins 5-7-28 for easement — 5.00

Paid to C. R. Holloway 5-7-28 for easement — 5.00

For damages release — 5.00
* * * "

The foregoing 9 items were followed by about 30 similar items; the whole totaling $786.50.

That itemization was followed by a third account, as follows:

"(3) Costs of and expenditures for the removal of that portion of transmission line between Raymondville and the Willacy County-Cameron County line located on private

property adjacent to the Raymondville-Harlingen highway from the 20 feet strip required in connection with widening said highway to new right of way:

"Paid to L. E. Meyers Construction
 Co. Voucher No. 324                $3,103.99
Paid N. A. O'Brien Voucher No. 219
 to reimburse him expenses           4.00
Paid to L. W. Meyers Construction
 Co. Voucher No. 564 to cover
 equipment depreciation            250.00
                                   —————
                                 $3,357.99
        Grand total              $6,055.01"

The statement was then concluded with the affidavit of the "Chief Clerk of the engineering department" of appellee, that the foregoing account "is within the knowledge of affiant just and true; that it is due and that all just and lawful offsets, payments and credits have been allowed," being the form prescribed in article 3736.

Upon the trial appellee introduced said account, over various objections urged by appellant, and put on said chief clerk to prove up the several items therein. It developed that the witness knew nothing except that appellee paid the amounts of said items to contractors and subcontractors and other intermediate parties. Upon this testimony the trial court rendered judgment in favor of appellee for $6,055.01, being the full and precise amount of the account, plus $931.25 interest.

We are of the opinion that the judgment must be set aside, for several reasons.

In the first place, it is perfectly obvious that the suit is not one upon open account within the contemplation of article 3736; that it may not be proved up by verified itemization as was sought to be done; that it does not require sworn denial from the defendant as a basis for contesting it, as contended by appellee. McCamant v. Batsell, 59 Tex. 363; Austin & N. W. Ry. v. Daniels, 62 Tex. 70; Schucht v. Stidham (Tex. Civ. App.) 37 S.W.(2d) 214; Dodson v. School (Tex. Civ. App.) 42 S.W.(2d) 288; Prairie Pipe Line Co. v. Owens (Tex. Civ. App.) 242 S. W. 244.

It follows that appellee's suit was not aided by itemization and verification of the claim, the attaching of the sworn account to the petition, or the introduction of it in evidence, and appellee was nevertheless under the necessity of alleging and proving its claim as fully and specifically and positively as in any other character of action. Appellee did not meet this requirement either in the pleading or the evidence.

Again, under the contract pleaded by appellee, it was not entitled to recover any of the charges sought to be collected by this suit except the "actual cost, expenses and outlay incurred by it in the removal of" its transmission line from the easement then occupied by it, whereas it sued for and recovered the claimed cost of purchasing a new right of way and installing its facilities thereon, as well as numerous other items, such as depreciation of equipment and the like, not shown to have been within the contemplation of the parties to the contract sued on.

Thirdly, the purported itemized statement was not sufficient as allegation of the expenditures for which reimbursement was sought and recovered. Items such as "paid to L. E. Meyers Construction Co. Voucher No. 324, $3103.99," "July Journal entry No. 68, Depreciation on car, $11.03," "August Voucher No. 268, expenses, L. F. Boling, $8.60," "August Journal entry No. 150, labor, $3.15," mean nothing as allegations of expenditures, and yet much, if not most, of the alleged cause of action rests upon such itemization. Nor was the proof thereof any more satisfactory. Such allegations and proof are fundamentally ineffectual. Tankersley v. Sales Co. (Tex. Civ. App.) 242 S. W. 328; Adelman v. Shoe Co. (Tex. Civ. App.) 297 S. W. 863; Nichols v. Murray (Tex. Civ. App.) 284 S. W. 301. These conclusions require reversal of the judgment.

Numerous questions are presented in the briefs, but they were not raised below in such way as to invoke specific rulings upon them as they are presented here. At least, we are not disposed to pass upon those questions in view of the unsatisfactory record and presentation in this court. The case should be repleaded, and the facts more clearly developed, and the findings of the trial court elicited thereon. In fact, the specific points upon which we base this decision of reversal do not seem to be presented by appellant, but they are so patent, and the errors so apparent upon the face of the record, as to be fundamental, requiring that they be noticed though not assigned.

The judgment is reversed, and the cause remanded.

On Motion for Rehearing.

Appellee complains on rehearing that the judgment of reversal rests solely upon unassigned errors, and it is true that only unassigned errors were discussed in the original

opinion. We were of the opinion, and now express the holding, that errors are shown in appellant's propositions 16, 17, 18, and 19, and the reversal rests upon those errors, as well as those discussed.

Appellee's motion for rehearing will be overruled, but in view of the additional holdings herein expressed, appellee is given the right to file a second motion for rehearing.